The last case today, number 241432, Miguel Armando Rivera Samayoa versus Pamela Bondi. Will counsel for the petitioner please come up and introduce yourself on the record to begin. Good morning. Excuse me. Good morning and may it please the court. Christian Meyer on behalf of petitioner Miguel Rivera Samayoa. I would ask for two minutes of rebuttal time. Okay. And you may proceed then. So continuing on with the lengthy discussions that we've had today, petitioner is seeking review of the agency's denial of his appeal of the cancellation removal application based on the hardship standard. As discussed at length, Wilkinson does permit review of this determination, does not set out the standard with which these determinations should be reviewed and does discuss that factual determinations should remain unreviewable. However, factual determinations, whether at this level or at the board level, play into whether a decision has considered all relevant factors, a legal standard, whether it is adequately reasoned as a matter of law. Within the immigration context, this court has held that the failure of the board to engage in adequately reasoned decisions presents a reviewable and reversible error of law. So when this court is presented with questions where factual determinations are unsupported by the record, at a certain point, to ensure fairness, to ensure adequate review, legal questions, the court must engage in some review of the facts. So with respect to respondent's arguments that I believe raised in the brief that respondent or sorry, the petitioner has not raised challenges over which this court has jurisdiction, A, the argument just presented that there is, in fact, a legal question when factual determinations are so contrary to the record that adequate review is not engaged with by the agency. Further, the petitioner also raised that the board failed to correct the immigration judge's failure to consider all relevant evidence. The board has laid that out as the standard for determinations on cancellation hardship. One of the major issues is the board states that the immigration judge evaluated what will happen to the qualifying relatives should they remain in the United States or if they follow respondent to Guatemala. Looking at the immigration judge's decision, that's not the case. The immigration judge's decision discusses solely if the applicant were returned the children's comfort and familiarity with the language and way of life in the country of possible and availability of child care, not just medical care in the country. Excuse me, counsel, it is pretty clear from our case law that the BIA is not allowed to make its own factual findings, right? Yes. Okay. That's correct. So are you saying that here the BIA violated that legal prohibition when it made its own finding that the children are going to remain in this country? Is that a legal error? Yes, I believe so. And in addition to it, there's the failure to confront by the immigration judge. Sorry, let me rephrase. The board fails to confront the immigration judge's absence of any analysis about any hardship that would be created should petitioner be removed but the children remain. And the testimony is quite clear that petitioner is the primary breadwinner for the family. The mother has a disability related to a leg injury, struggles to make minimum wage, and the testimony also reveals that petitioner is the primary caretaker when it comes to medical appointments. He picks up his children from school who suffer from chronic migraines relating to lead poisoning. For one, another just has chronic migraines that affect his ability to, you know, learn. He suffers those issues. He also testified to the fact that he is the primary support in addition to the outside help that the children receive. Two of the children struggle in school, one relating to the lead poisoning. But he is the primary person at home who provides additional assistance on top of the teachers who provide assistance outside of the school. He also brings all of the children to their medical appointments. On top of two of the children, their anemia, one of which is so severe that the child was hospitalized and required blood transfusions, he is responsible for ensuring that dietary restrictions, you know, are followed to ensure that these children, you know, remain as healthy as possible under their medical conditions. This is not a case where there's a sole child like in matter of JJG where there was a sole child with hypothyroidism. This is three, four qualifying relatives, one of which has asthma. The three remaining have rather severe conditions. Like I mentioned, one has lead poisoning and the resulting cognitive, you know, impacts from that. One at a young age was found to have problems with blood flow within his heart. While that has since stabilized, it still presents a rather severe long-term consideration. As well as the child that I just mentioned who has severe anemia that resulted in his hospitalization, I believe it was within one year of the individual hearing. And the doctors, his testimony reflects that his doctors had told him that any nosebleed that lasts more than just three minutes is so severe that he needs to seek immediate medical treatment. So... So you're saying that substantial evidence compels a different result? I'm saying that the IJ entirely failed to consider what removing the primary caretaker for all of these children in terms of their medical treatment. There's no discussion. While there is consideration that there may be, you know, they can speak the language if they return to Guatemala, that there's availability of child care. Again, there's no discussion of the medical care. While the board does, you know, address that in some fashion. What more would the IJ have to do? Because I'm looking at his opinion this time, page three. In order to determine the hardship, I have evaluated the ages, health, and circumstance of the qualifying family members, respondents' family ties, health of respondents, family members, et cetera, et cetera. So isn't he saying he's considering all of that? Or are you saying he had to make more specific findings? I'm saying he said he considered all of it. But, again, speaking to specifically the circumstance where the children would remain in the country, the immigration judge entirely fails to consider any hardship. He didn't show enough analysis to support what you're saying is just a broad conclusion. Yes, I believe so. And I think that it fails to consider evidence that shows that removal of petitioner would create hardships for these children substantially beyond that of, you know, regular removal. You're going to have two minutes for rebuttal. Thank you. Ms. Clay. Good morning. Sharon Clay on behalf of the government. If you can lower the microphone a little bit. May it please the Court. Again, consistent with my colleagues, we are advocating for substantial evidence standard review for the hardship cases primarily because like my colleagues, we are suggesting that substantial evidence standard is the appropriate standard for reviewing hardship cases because it is a primarily factual determination. In this particular case, the agency acknowledged that there was going to be hardship here. The problem was, and as opposing counsel had suggested, to consider whether or not the hardship rose to the level of extremely unusual hardship, the hardship had to be extreme, beyond extreme, but not necessarily unconscionable. And in that continuum, the Court has to evaluate the different facts to determine whether or not that hardship rests somewhere closer to normal or something that's typical, or if it presents an issue where the person is truly experiencing something that's beyond what normal people would experience when a parent is removed, whether it's here in the United States or away. In this particular case, most of the case law has established that diminished living standards and economic hardships generally do not get you to that exceptional, extremely unusual hardship. One of the, as you had suggested, Judge Thompson, that medical conditions tend to be the one area in which they're able to reach that burden of proof in cancellation of removal cases. In this particular case- The counsel is saying that that's what we have here, medical conditions that weren't adequately considered. Well, okay. Part of the problem with this particular case is that the lack of evidence that was presented in this case. This case, unlike other cases, was relying primarily on petitioner's testimony. And because it was relying on his testimony and his lack of personal first-hand knowledge of circumstances and situations in Guatemala, and no corroborating evidence for all the medical issues that his children had, the immigration judge actually determined that the children's medical conditions were not that serious based on his testimony alone. The immigration judge looked at the health of the oldest child and thought that he was relatively healthy. The petitioner also, I mean, the immigration judge also looked at the conditions of the two children that had been experiencing some of the more difficult issues and found that both of their concerns had been kind of stabilized and have been sort of kind of under control. They hadn't had any episodes for a long period of time. There wasn't any factors that really substantiated what his claims were. And the resultant determination was that the immigration judge didn't find that the medical condition was that serious. When petitioner – Were there medical records? Yes, there were records in the file. Unfortunately, the immigration judge struck the evidence in the beginning of the trial because they were submitted as untimely. Yes, they were untimely. They were submitted within the 15-day call-up for evidence prior to the hearing. So the hearing was scheduled for June 12th, and I believe the documents were submitted on June 3rd and June 7th. There were over 600 pages, and the immigration judge agreed with government's counsel that he had an established good cause for filing the documents late. In that issue, there's no challenge to that ruling. Right, and he did not challenge that ruling. And so what we're left here in this particular case is this court's review of the application of the established facts to the hardship standard. And in this case, the established fact is that the children's medical condition is not that serious, and that – But that's based on the record, taking out what was struck. Yes, it's based on his testimony. So, in theory, had this been a criminal case, it could have been an effective assistance of counsel. But for immigration cases, that has not been extended. Actually, they brought that up in the case about, you know, some concern about ineffective assistance because the documents had not been admitted. But the – because they had not been challenged, and the stats – the statements had been accepted or established, the facts had been established in this case. The petitioner was required to challenge those particular findings. And in this particular case, he didn't challenge the immigration judge's determination that the medical condition was not serious. Counsel, what about the – you would agree that the BIA is not permitted to do its own fact-finding, right? That is correct. Okay. Well, it does appear that the – although the IJ, I think, considered both possibilities, what happens if the children stay and the father has to go, or what happens if the children go with the father? The BIA seemed to make a determination, we think they're going to stay and we're going to analyze hardship in that way. What permitted them to do that? Well, actually, I disagree. I think the board actually considered both based on relocation and sort of alpine on the fact that he thought the kids were going to stay because petition never came out and said one way or the other. He was sort of kind of hedging his bet, I guess, thinking that, you know, I didn't necessarily say I'm going to remove them so you need to evaluate it based on relocation. Well, the board says we note that the children will apparently remain with their mother. The IJ did not make that determination. The IJ, it's not a particularly artful or fully stated decision, but the IJ seemed to consider it both ways.  Does the BIA go on to consider it both ways? Well, the board in reviewing the decision actually considered it both ways as well. If you turn to page 2, the first full paragraph is the discussion about the challenges if they remain, but the second full paragraph is him actually addressing whether or not he would suffer the requisite hardship on removal. Right. And because of the lack of evidence in the record, it was hard for the agency to actually find that his hardship would rise to the standard of review for hardship necessary for relief. The opposing counsel actually filed a 28-J, and I wanted to just briefly mention that I wanted to respond to that. And I guess my response to the filing of the 28-J is that Loper-Bright doesn't necessarily apply in this particular case. It's my understanding that Loper-Bright hasn't changed past precedents in terms of cancellation of removal. And in that sense, it hasn't changed the legal validity of Andazola, Monreal, and Racines. To the extent that this court would find that the court's reliance on Matter of JJ might have raised the ire of a consideration or the deference, I would suggest that it doesn't because the court or the board in Matter of JJG actually was, when it was discussing the medical conditions and the requirement that you have to show that the medical treatment is unavailable, reasonably unavailable in the other country, that the immigration judge was, I mean, the board was actually clarifying the evidentiary burden for the petitioner in order for the court to weigh the seriousness of his medical condition. And to that end, does anybody have any questions? Any further questions? Okay, thank you. And then, Mr. Meyer, you have two minutes. Thank you. Christian Meyer on behalf of Petitioner. So in relation to the analysis of the board, so first off, the board does provide some analysis on whether, you know, respondents' arguments regarding a reduced standard of living do not establish exceptional and extremely unusual hardship. Now, assessing all the factors in the aggregate, the ability of this primary breadwinner to provide the necessary medical care for three separate individuals with three separate medical challenges that require specialized diets, that require specialized medication, that require check-ins with specialists based on the nature of those medical issues, those just simply stating that there's a reduced standard of living doesn't really take into account all of the factors. Well, some evidence was stricken from the record by the immigration judge. He did take judicial notice of not only the human rights report, but two conditions relating to the availability of care in Guatemala. And not only do those show that there's limited access to care, as well as corroborating the petitioner's statement that the availability of medications depends, you know, on how much money you have, it's of further note that the human rights report states that someone who earns minimum wage, and keep in mind this is a man who works in cleaning services, he does not have any type of specialized, you know, job experience that would present anything more than, you know, diminished economic capacity. The human rights report states that the minimum wage... Counsel, very quickly. So I'm looking at the BIA decision. The BIA talks about the respondent's sites to conditions in Guatemala, relocation to a country with a higher crime rate is not unusual. Otherwise, respondent's arguments regarding a reduced standard of living do not establish exceptional and extremely unusual hardship. So the BIA takes account of specific evidence relating to conditions in Guatemala, and says, well, I understand all of that, but those arguments regarding the reduced standard do not establish exceptional and extremely unusual hardship. Are you saying we can't, what are we supposed to say about that determination? Well, I would just continue on in that citation directly. It says, see matter of Andazola. Observing that economic detriment alone is insufficient to establish exceptional and extremely unusual hardship. There's absolutely no analysis by the immigration judge, likewise by the board, that delves into the primary breadwinner losing access to the, you know, current standard of economic, you know, earnings he's able to provide, which serves as the sole basis for all of the requisite medical treatment. This line is just essentially saying, well, you can't succeed on just saying that you're not going to make as much money. There is no analysis of the aggregate factors, which is the legal standard the board has advanced. How does the economic detriment play into the access to care for these individuals? The board doesn't address it, the immigration judge doesn't address it, and for that reason the decisions are insufficiently reasoned and warrant reversal. Let me ask you one final question, and this may be something, I just want to get your thoughts on it. Obviously you were not counsel below at the agency level, correct? I was not, no. Okay. But I am concerned, and again, the issue I raised about ineffective assistance, there are 600 pages out there, maybe they could really help your client. We don't know what's in there, they're not part of the record, but they're stricken because they were submitted late. Is there anything, because I believe ineffective assistance with counsel has never been extended to immigration proceedings, although there's plenty of law review articles about that. Yeah. Is there anything that could help your client, I can't fathom a way, but a way that below this would require a remit. I don't think so, I don't think there's anything out there, but I don't know if you've had that issue before. I can't speak to that exact issue. I would say, you know, had I engaged in the representation before the board, I certainly would have raised that the failure to admit that evidence which speaks directly to the hardship, you know, the relevancy of that specifically when it relates to medical treatment. I have seen, you've probably seen other cases where the evidence was not presented or the parties were given evidence and time to submit and it's not just there, but nobody says I'm going to bring it or I failed to bring it. This is the first time I've really actually seen somebody bring it late and the agency strike it. Yes, I do think, you know, certainly. And we don't know the prejudice because we don't know what's there. Right. It's not part of the record. Yes, it certainly wasn't considered, you know, by the board. However, I believe those submissions are in the administrative record. In relation to that, yes, certainly. But even if they're in administrative record and we see them and let's suppose we say, oh, they could have been favorable, we have that ruling. Yes, absolutely. That's the only thing we can really do. I don't believe so. However, Petitioner, you know, everything that he advanced in his testimony speaks directly to, you know, his status as, you know, the primary caretaker, primary breadwinner, you know, in addition to everything that he testifies about. So I believe that would have been sufficient to reverse and, you know, those factors should have been considered at both levels, board and immigration court. Well, thank you very much.